## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ANGELICA GUERRA,<br>　　　　　Appellant,<br><br>　　　　v.<br><br>DEPARTMENT OF HOMELAND<br>　　SECURITY,<br>　　　　　Agency. | DOCKET NUMBER<br>DA-0752-17-0013-I-1<br><br><br><br>DATE:　February 8, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Carlos E. Paredes, New Caney, Texas, for the appellant.

Jennifer Cook, Esquire, Houston, Texas, for the agency.

#### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

#### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which affirmed her removal for her inability to perform the essential duties of her position.　Generally, we grant petitions such as this one only in the following circumstances:　the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.　Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.　In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.　*See* 5 C.F.R. § 1201.117(c).

or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to apply the correct legal standard to the agency's charge of inability to perform the essential duties of her position, we AFFIRM the initial decision.

## BACKGROUND

The appellant was employed as a Customs and Border Patrol Officer (CBPO) with the U.S. Customs and Border Protection Office of Field Operations, Houston Field Operations, Port of Houston Airport. Initial Appeal File (IAF), Tab 4 at 22. A CBPO is a law enforcement position, and the incumbent is therefore required to carry a Government-issued firearm. *Id*. at 85. Because the position requires an officer to carry a firearm, it also has medical requirements which state, in part:

> The officer must exercise sound judgment, maintain mental alertness at all times, and function under dynamic and stressful conditions in which there are time constraints, concerns for national security, and threats of terrorism….

> The standard requires that the person be medically and physically capable of performing the essential functions and duties of the position safely and efficiently without aggravating existing health problems or endangering the health and safety of the individual, others, or national security. The individual must be free of any organic, structural or fundamental impairment(s) or existing health problem(s) that would be aggravated in response to the work environment and/or would affect safe and efficient job performance.

IAF, Tab 5 at 4.

In December 2014, the appellant self-reported to the agency that she threatened to kill her son's dog, later explaining that she meant that she would have the dog euthanized, but that her son would not understand that term. IAF, Tab 13 at 42. After a telephone call from her son to the appellant's ex-husband, law enforcement was dispatched to the appellant's home where she was detained for a short period before being released. *Id*. Two months later, in February 2015, the appellant called her first-line supervisor and told him that she needed to talk and that she was located in the breakroom. IAF, Tab 4 at 75. When the supervisor arrived at the breakroom, the appellant "was laying on the couch with her hair in disarray," and when the supervisor directed her to "sit up and fix herself," the appellant responded that she had texted her ex-husband that she wished he would die, or words to that effect. *Id*. The supervisor then escorted the appellant to the supervisory CBPO's office, who was there with the Watch Commander, and upon arriving, the appellant started crying and stated that "she was dying" because her son now lives with her ex-husband. *Id*.

Initially, the agency referred the appellant to the Customs and Border Patrol (CBP) Employee Assistance Program (EAP), IAF, Tab 13 at 58, but on March 11, 2015, the Port Director issued the appellant a letter directing her to undergo a fitness-for-duty (FFD) examination to determine her capacity to perform her duties as a CBPO, IAF, Tab 4 at 87-89. In the letter, the Port Director informed the appellant of the basis for the exam, explaining that her indications to her supervisors concerning her struggles with, among other things,

depression, major financial issues, and heavy drinking, raised questions in his mind regarding her continued capacity to perform the full range of her duties in a safe and effective manner. *Id*. at 87.

The appellant underwent the FFD exam, but the results were inconclusive as to whether there was a medical explanation for her behavior and she was directed to undergo a mental health examination with Dr. L.N., a licensed forensic psychiatrist. IAF, Tab 5 at 30-31. After the appellant's psychiatric independent medical examination (IME), Dr. L.N. concluded that the appellant could not safely, efficiently, or reliably perform all of the duties of her position without restrictions, and he stated that she should not carry a Government-issued firearm because of her current alcohol use disorder and depressive and anxious symptoms. IAF, Tab 6 at 21. After Dr. L.N. produced his report, the appellant sought an independent evaluation with her own physician, Dr. K.S., who concluded that the appellant was not suffering from an acute mental illness at that time that would impair her ability to work in law enforcement and that she was not an imminent danger to herself or others. IAF, Tab 5 at 47. Several months later, the agency and the appellant engaged in an interactive reasonable accommodation process, and the agency made a tentative reassignment offer, which the appellant declined. *Id*. at 49-54; IAF, Tab 6 at 4.

On July 26, 2016, the agency proposed the appellant's removal based on the charge of "Inability to Perform the Essential Duties" of a CBPO. IAF, Tab 4 at 31-36. The proposal notice relied on the initial report from Dr. L.N. and an addendum report issued 3 months later. *Id*. at 32; IAF, Tab 6 at 10-23, 74-76. Based upon Dr. L.N.'s conclusion that the appellant should not carry a Government-issued firearm and the fact that the appellant's job description required that she carry one, the agency asserted in the proposal notice that the appellant was not fit for duty. IAF, Tab 4 at 31-36. On September 14, 2016, the deciding official issued a final decision upholding the proposed removal. *Id*. at 23-30. In the decision notice, he found that the appellant was unable to

perform the duties of a CBPO and that, due to her medical conditions, her inability to perform the essential functions of a CBPO, and her declining the reassignment offer, there was no adequate remedy available other than removing her from Federal service. *Id*. at 28.

The appellant appealed the agency's decision to the Board, claiming that the agency failed to establish that she was disqualified from performing the duties of a CBPO and that the agency committed harmful errors when it forced her to undergo an FFD examination and an IME evaluation. IAF, Tab 1 at 5. She also claimed that the agency discriminated against her based upon a perceived disability. IAF, Tab 8 at 4-6.

After holding a hearing, the administrative judge issued an initial decision sustaining the appellant's removal. IAF, Tab 18, Initial Decision (ID). He found that, considering the evidence as a whole, the agency proved that the appellant suffered from several medical conditions that precluded her from being able to carry a firearm, which is an essential duty of a CBPO. ID at 10. Thus, the administrative judge found that the appellant's medical condition was disqualifying. *Id*. He further found that the recurrence of the appellant's medical condition could not be ruled out and that her former position's duties are such that a recurrence would pose a reasonable probability of substantial harm. ID at 11. The administrative judge also found that the appellant failed to prove any of her affirmative defenses, including her disability discrimination claim[2] and that

---

[2] The appellant does not argue on review that the administrative judge erred in finding that she failed to prove her disability discrimination defense. PFR File, Tab 1 at 6-11; ID at 12-15. We note that, in analyzing that claim, the administrative judge used the analytical framework set forth in *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 51 (2015) and *Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 21 (2013). ID at 12-15. Following the issuance of the initial decision, the Board issued *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, which overruled parts of *Savage* and *Southerland*, and clarified the proper analytical framework to be applied to affirmative defenses of discrimination and retaliation. Specifically, the Board explained that for status-based disability discrimination claims, an appellant is entitled to some relief, i.e., injunctive relief, if she satisfies the motivating factor standard, but in order to obtain full relief, she must show that disability discrimination was a but-for cause of the

the selected penalty of removal was reasonable and promoted the efficiency of the service.  ID at 12-19.

The appellant has filed a petition for review arguing that the agency failed to establish that her removal promotes the efficiency of the service, and that it violated her due process and Fourth Amendment rights.[3]  Petition for Review (PFR) File, Tab 1 at 6-11.  The agency has filed a response to the appellant's petition.  PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

In the initial decision, the administrative judge stated that, to prove its charge of physical inability to perform, the agency was required to show the following:  (1) the appellant's disabling condition itself was disqualifying; (2) its recurrence could not be ruled out; and (3) the duties of the appellant's position were such that a recurrence would pose a reasonable probability of substantial harm.[4]  ID at 4.  Following the issuance of the initial decision, however, the Board determined that this standard applies only when an employee who occupies a position with medical standards is removed based solely on medical history,

---

personnel action.  *Pridgen*, 2022 MSPB 31, ¶¶ 40, 42.  However, because we agree with the administrative judge that the appellant provided no evidence, absent conclusory assertions, that her removal was motivated by disability discrimination, ID at 15, there is no basis to reverse the administrative judge's findings.  *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (explaining that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

[3] The appellant does not appear to challenge the administrative judge's finding regarding her harmful procedural error defense.  PFR File, Tab 1 at 6-11; ID at 15-18.  We have reviewed the record, and we find no reason to disturb that finding here.

[4] Although not cited by the administrative judge, this is a recitation of the standard set forth in 5 C.F.R. § 339.206.  Subsequent to the appellant's removal, the Office of Personnel Management amended 5 C.F.R. § 339.206 as to the degree of risk required.  Medical Qualification Determinations, 82 Fed. Reg. 5340-01, 5346-47, 5352 (Jan. 18, 2017) (Final Rule).  However, given our findings herein, this amendment is not material to the outcome of this appeal; thus, we need not address whether the regulatory changes apply retroactively.  *See Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 11 n.2.

i.e., when the only basis for concluding that the employee was medically unable to perform the core duties of her position was the fact that her medical records reflected that, at some time in the past, she was classified as having, was examined for, or was treated for the medical condition or impairment in question. *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶¶ 10-15.  The Board explained that in cases, as here, involving a current medical condition, the agency must prove either a nexus between the employee's medical condition and observed deficiencies in her performance or conduct, or a high probability, given the nature of the work involved, that her condition may result in injury to herself or others.  *Id*., ¶ 15.  The Board has otherwise described this standard as requiring that the agency establish that the appellant's medical condition prevents her from being able to safely and efficiently perform the core duties of her position.  *Id*.

Here, although the administrative judge both enumerated and applied the standard set forth in 5 C.F.R. § 339.206, remand is unnecessary because the record is fully developed on the relevant issues.  *See id*., ¶ 20.  As discussed below, while we modify the initial decision to apply the correct legal standard, we find that, because the agency established that the appellant's current medical condition prevented her from being able to safely and efficiently perform the core duties of her position, the agency proved its charge, and therefore, we ultimately affirm the removal action.

The agency established a nexus between the appellant's current medical condition and observed deficiencies in her performance or conduct, or a high probability, given the nature of the work involved, that her condition may result in injury to herself or others.

In finding that the agency established that the appellant was unable to perform her essential duties, the administrative judge thoroughly considered the medical evidence presented by both the agency and the appellant.  First, he reviewed the testimony from, among others, Dr. L.N., who, he noted, was Board certified in forensic and addictive psychiatry.  ID at 5-8.  Dr. L.N. testified that the appellant suffered from alcohol dependency, an adjustment disorder

(anxiety/depression), and a sleep disorder. Hearing Compact Disc (HCD) (testimony of Dr. L.N.). He also testified that the appellant's alcohol use rendered her incapable of working any hours at her current position because alcohol use disorder causes increased impulsivity and impaired executive cognitive function. *Id.* The administrative judge found that Dr. L.N. credibly testified that sound judgment and the ability to react quickly to complex and difficult situations are required skills for an individual to safely carry a firearm. ID at 6. Based on this assessment, Dr. L.N. testified that the appellant could not safely carry a Government-issued firearm. HCD (testimony of Dr. L.N.). Dr. L.N. also believed that the appellant could rehabilitate herself through an intensive treatment program, but that there is no evidence that she sought such treatment. ID at 11. He further testified that, even if the appellant participated in an intensive treatment program, relapse was still very likely.[5] ID at 11.

The administrative judge also considered the appellant's medical evidence, which included an evaluation performed by Dr. K.S., who did not testify at the hearing. ID at 6. The administrative judge discussed Dr. K.S.'s evaluation of the appellant, which concluded that the appellant suffered from alcohol abuse that was in remission. ID at 6; IAF, Tab 5 at 47. Dr. K.S. also concluded that the appellant had met the criteria for major depressive disorder and alcohol abuse in the past, but she no longer did. *Id.* She recommended that the appellant see a

---

[5] The appellant argues on review that the agency failed to meet its burden because Dr. L.N.'s findings conclude that a drinking problem and serious substance abuse are "likely," which is a level of probability discouraged by the agency policy, which appears to require a firmer diagnosis. PFR File, Tab 1 at 9; IAF, Tab 13 at 104. First, we clarify that the comments were made by a licensed clinical psychologist, R.F., Ph.D., rather than by Dr. L.N., after he administered a specific examination on the appellant. IAF, Tab 6 at 78-79. Second, even if we assume, *arguendo*, that the agency erred in the application of its own policy, we would find that such an error does not require reversing the initial decision. *See Powers v. Department of the Treasury*, 86 M.S.P.R. 256, ¶ 10 (2000) (stating that for a procedural error to warrant reversing an agency action, the appellant must establish that the agency committed a procedural error that likely had a harmful effect on the outcome of the case before the agency). Even in the absence of this evidence, the outcome of the appeal would be the same.

therapist and that she follow up with a psychiatrist as needed. *Id*. Dr. K.S. ultimately concluded that the appellant was not suffering from an acute mental illness that would impair her ability to work in law enforcement or with the agency and that she was not an imminent danger to herself or others. *Id*.

The administrative judge determined that Dr. L.N.'s conclusions were more probative than the medical evidence provided by the appellant. ID at 7. We discern no basis to disturb this finding.[6] In assessing the probative weight of medical opinions, the Board considers whether the opinion was based on a medical examination and whether it provided a reasoned explanation for its findings as distinct from mere conclusory assertions; the qualifications of the expert rendering the opinion; and the extent and duration of the expert's familiarity with the appellant's treatment. *Adams v. U.S. Postal Service*, 108 M.S.P.R. 250, ¶ 13 (2008), *aff'd*, 309 F. App'x 413 (Fed. Cir. 2009). The administrative judge reasoned that Dr. L.N.'s conclusions were based on a comprehensive evaluation that included several self-reported inventories, a 3-hour interview with the appellant, the medical results from the appellant's FFD examination, and the position description for a CBPO. ID at 7. In considering Dr. K.S.'s evaluation, the administrative judge noted that it was based upon a less thorough analysis, as there was no indication that she took a history of the appellant's addiction and did not document whether the appellant had implemented successful treatment methods and coping strategies. ID at 6-7, 9-10. The administrative judge also stated that there was no indication that Dr. K.S. had any expertise in evaluating law enforcement officers or whether she reviewed the position description for a CBPO before reaching her conclusion. ID at 9.

---

[6] The appellant argues on review that there is no evidence that she received anything less than satisfactory performance ratings, suggesting that she was able to perform the essential duties of a CBPO contrary to the agency's charge. PFR File, Tab 1 at 6. We find the appellant's performance ratings to be irrelevant because her performance was not germane to the charge brought by the agency; rather, the charge focused on her inability to carry a firearm, which is one of her job's requirements. IAF, Tab 4 at 31-36, 85.

Therefore, based on the foregoing, we find that the agency proved that the appellant was unable to safely and efficiently perform the core duties of her position. The record reflects that at the time of her removal, the appellant was suffering from alcohol dependency, and exhibiting anxious and depressive symptoms, which impaired her judgment, reflexes, and concentration, thus preventing her from safely carrying a firearm. IAF, Tab 6 at 21-22. Furthermore, the appellant's medical conditions resulted in observed deficiencies in her conduct, as she threatened to kill her son's dog, told her former husband that she wished he would die, and had a disturbing episode while on duty, which included lying on the breakroom couch with her hair in disarray, crying, and stating to upper management that she was dying. IAF, Tab 4 at 75, Tab 13 at 42. While we sympathize with the appellant's situation, such behavior is nonetheless concerning for an employee that is entrusted with the safety of the public, and in this role, is required to carry a Government-issued firearm. Thus, considering the evidence in the record, we find that the agency established a nexus between the appellant's medical conditions and a deficiency in her conduct, or at least, a high probability, given the nature of the work involved, that her condition may result in injury to herself or others. Accordingly, we find that the agency proved its charge of inability to perform the essential duties of her position.

The agency did not violate the appellant's due process rights.

On review, the appellant also argues that the agency violated her due process rights because it relied on aggravating factors to impose the penalty of removal that were not included in the proposal notice. PFR File, Tab 1 at 6-7. *See Lopes v. Department of the Navy*, 116 M.S.P.R. 470, ¶¶ 5-13 (2011) (stating that when an agency intends to rely on aggravating factors as the basis for imposing a penalty, such factors should be included in the advance notice of adverse action so that the employee will have a fair opportunity to respond to those factors before the agency's deciding official). She also argues that ex parte communications occurred among agency officials and that those communications

violated her due process rights. *Id*. at 7-8. *See Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (2014) (holding that ex parte communications that introduce new and material information to the deciding official will violate the due process guarantee of notice).

The appellant did not argue below that the agency had violated her right to due process. Moreover, the defense was not included among the issues the administrative judge identified for adjudication in her Order and Summary of Telephonic Prehearing Conference, and the appellant did not file an objection to the exclusion of the due process claim from that list of issues, despite being afforded an opportunity to do so. IAF, Tab 14. The Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980). Here, the appellant contends that, during cross examination by agency counsel at the hearing she was asked about aggravating factors that the deciding official had considered in his penalty determination, without prior notice that these factors would be considered. PFR File, Tab 1 at 6-7. These included her leave usage, the self-reported incident in which she stated that she wished her husband would die, an incident in which she threatened to kill the family dog, and the loss of her credentials. *Id.* at 7.

Even if the appellant was unaware of the basis for this argument until she testified at hearing, and if we found it was appropriate to consider the argument for the first time on review, we would find that it is meritless. The record shows that the above factors were not considered in the decision to remove the appellant, but rather in the decision to require her to undergo an FFD examination. IAF, Tab 4 at 23, 73-76. Furthermore, the traditional analysis for mitigating the penalty under *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981), does not apply in this instance because a removal for inability to perform the essential duties of a CBPO is considered nondisciplinary and such factors do

not apply in that penalty determination. *See Chandler v. Department of the Treasury*, 120 M.S.P.R. 163, ¶ 31 (2013) (noting that the *Douglas* factors do not apply to a furlough, consistent with the Board's practice of not applying them to nondisciplinary matters). Thus, we find that the agency did not violate the appellant's due process rights in this regard.

The appellant's argument that the agency engaged in ex parte communications when the Port Director spoke with her supervisors about her situation and she was not notified of these conversations in the proposal notice is based on a statement by the Port Director in the FFD order. PFR File, Tab 1 at 7 (citing IAF, Tab 4 at 87). This is a new argument that the appellant failed to raise below, based on evidence that was readily available to her. However, even if we considered the argument, as explained below, we find it to be without merit.

The due process protections against ex parte communication relate only to the deciding official and whether he engaged in ex parte communications that introduce new and material information that is so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding. *Stone*, 179 F.3d at 1376-77. Here, the appellant has not alleged that the deciding official obtained any new and material information; rather, she claims that the Port Director, who was the proposing official and who does not appear to have been involved in issuing the final decision, had ex parte communications with her supervisors prior to the issuance of the proposal notice. PFR File, Tab 7-8. Thus, we find that the agency did not engage in ex parte communications in violation of the appellant's due process rights.

The agency did not violate the appellant's Fourth Amendment rights.

The appellant argues that, when the agency ordered her to undergo an FFD examination, it also improperly obtained blood and urine samples not authorized by FFD examination protocol, thereby violating her Fourth Amendment right to privacy. PFR File, Tab 1 at 11. Again, this is a new argument that the appellant

failed to raise below, and again, even if we considered it, we would find this argument to be unpersuasive. The U.S. Supreme Court has addressed the question of the constitutionally protected privacy of a Customs officer and has stated that Customs officers who are required to carry firearms in the line of duty have a diminished expectation of privacy over intrusions occasioned by a urine test. *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 672 (1989). The Court goes on to explain that:

> [b]ecause successful performance of their duties depends uniquely on their judgment and dexterity, these employees cannot reasonably expect to keep from [an agency] personal information that bears directly on their fitness…. While reasonable tests designed to elicit this information doubtless infringe some privacy expectations, we do not believe these expectations outweigh the Government's compelling interests in safety and in the integrity of our borders.

*Id.*

Further, even without the U.S. Supreme Court's discussion of a Customs officer's expectation of privacy, the agency's Fitness for Duty Standard Operating Procedures manual states that when there is a question about an employee's mental health, the employee is required to undergo a medical exam prior to a psychiatric exam, and that such medical exams will include blood tests. IAF, Tab 13 at 113. Moreover, the appellant has failed explain how or why any of the agency's actions in collecting her blood and urine samples violate 5 C.F.R. § 339.301, which grants agencies the authority to conduct medical and psychiatric examinations. Consequently, we find the appellant's argument to be meritless.

We have considered the appellant's other arguments on review, but we conclude that a different outcome is not warranted. Accordingly, we affirm the initial decision.

## NOTICE OF APPEAL RIGHTS[7]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[8] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


*Gina K. Grippando*

FOR THE BOARD:                         _____
                                       Gina K. Grippando
                                       Clerk of the Board

Washington, D.C.